DECISION
This matter came before the full Court for oral argument on September 16, 2006 *38 before Chief Justice Mary Jo B. Hunter, Associate Justice Dennis M. Funmaker and Justice Pro Tempore Jo Been B. Lowe.
SUMMARY OF THE CASE
This case was initiated as an employment case based upon Mr. Brown’s Complaint alleging wrongful termination in May of 2004. A trial was held by former Chief Judge William Bossman on November 9, 2004. The former Chief Judge’s appointment ended on July 1, 2005. At the time of his departure, no decision had been penned by the former judge. On May 10, 2006, the current Chief Judge issued a decision on the case based upon the trial record. The matter was not retried before the current judge.
STANDARD OF REVIEW
This Court is adopting the standard of review that was articulated in the case of Hope B. Smith v. Ho-Chunk Nation, SU03-08 (HCN S.Ct., Dec. 8, 2003) which states that “an abuse of discretion standard” applies to allow for the Trial Court to make findings based on the Trial Court’s ability to view the parties and make decisions concerning the evidence. This standard is highly deferential to the Trial Court and this Court will uphold the Trial Court’s findings “absent a showing that the Trial Court somehow failed to make a necessary finding, ignored the great weight of the evidence, or otherwise abused its discretion in making findings of fact.” Id. at pg. 4.
DISCUSSION
I. Did the Trial Court abuse its discretion by creating a new cause of action after the trial?
Yes. This Court believes that the current judge reviewed files and tapes of the proceedings that had occurred approximately two years earlier. It is unclear from the trial record what the record held as the materials forwarded to the Supreme Court did not contain any complete transcriptions or recordings of the trial. This Court, along with the parties, was only able to speculate as to the source of some of the information upon which the Trial Court based the decision. Based on the available materials as submitted by the parties, this Court’s review does not find support for the Trial Court decision nor the complaining party’s invocation of a Free Speech claim.
Usually, this Court gives deference to the Trial Court based upon the lower court being the trier of fact who is present as the proceedings occurred. However, in this case, the decision was made by a judge who did not preside over the trial. The judge was not in a position to determine the credibility of witnesses or hear arguments from counsel.
The actions taken by the Trial Court to derail the analysis of the underlying determination and refocus the case arbitrarily on Free Speech constitutes an abuse of discretion. This court strongly encourages parties to clearly state their claims in the complaint, support the claims with testimony and appropriate documentation supporting their respective claim at trial, thereby creating a record that allows subsequent reviewers to focus on the proper issues.
Assuming arguendo that the free speech claim was a part of the complaint, it is a case of first impression. The Ho-Chunk Nation Court system is not required to fully adopt the precedents established by the United States Supreme Court as to the United States Constitution. *39 Rather, the Ho-Chunk Nation Court system must rely on the Nation’s laws and perhaps, the Nation’s common law or tribal law. The distinction of a tribal court is to look at legal issues in a fair and objective manner in light of tribal law and custom, rather than simply wholesale adopting the laws and precedents of the United States.
Here, the Trial Court’s analysis of existing United States Federal law would shelter and protect the speech of the employee having a responsible management position—regardless of whether the employee’s position and speech might be misconstrued to be an official position of the Ho-Chunk Nation. Such an analysis is flawed as it overlooks the context of the communications, most critically the importance of respect for one’s tribe and the goals of that sovereign.
The Supreme Court of the Ho-Chunk Nation refers to other courts for guidance in this matter. Here we look to the decision in the case of Helen Gilbert, Appellant v. Flandreau Santee Sioux Tribe[1]. In that case the Supreme Court of South Dakota held that the lower court had not made an error in determining that there was no breach of Federal Constitutional nor State Constitutional rights of free speech when employee was terminated for violating the tribe’s policy against political activity. The communications were the airing of internal disputes and not protected speech. The South Dakota Supreme Court cited to State v. Wicklund, 589 N.W.2d 793, at 799-801 (Minn.1999), (noting that 33 states’ free speech provisions contained the following language “all persons may freely speak ... on all subjects being responsible for the abuse of such right”). This concept of the guarantee of free speech, tempered by responsibility for abuse is consistent with Ho-Chunk values.
The Ho-Chunk Nation Constitution, in Article X, § 1.a.(1) guarantees that the Ho-Chunk Nation will not make or enforce any law abridging the freedom of speech. To date there has been no case in this Court which has sought a determination concerning whether the provisions of the Nation’s Policy and Procedure Manual or today’s Employee Relations Act were enacted outside the scope of this Ho-Chunk Nation Constitutional guarantee. It is an abuse of discretion of the trial court to proceed down this path in this instance and to make findings of fact based on the issue of free speech, which is not at dispute.
II. Did the Trial Court commit reversible error by failing to make a determination as to the nature of an employee’s employment?
The Trial Court Judge may have committed an error by failing to determine whether or not Mr. Brown was an at-will employee. This Court was unable to ascertain whether or not that had been addressed below. However, the status of Mr. Brown as an at-will employee is a material fact that should have been decided by the Trial Court. If it had not been addressed by the initial judge, it certainly *40 was an issue that the second judge could have had the parties brief so that the record was final and complete as to that material fact.
Because the record is unclear as to this point, the Court will not reverse on the basis of this argument. The Court is unable to discern whether or not the threshold question of Mr. Brown’s employment status was made a part of the record below.
III. Did the Trial Court abuse its discretion and commit legal error in the application of the federal precedents?
Yes. Here the focus of the termination should not be placed on the issue of whether rights of free speech have been upheld, but rather the key is the conduct of the employee relative to his tribal employer. At oral argument both parties clearly confirmed for the Justices that this was not a matter of the right of free speech. The Log of Proceedings Electronically Recorded (“LPER”) shows that the parties acknowledged the First Amendment issue was not a part of the original complaint. See LPER at page 5 of 25. (10:17:49 a.m.-10:19:59 a.m.). See also LPER at page 12 of 25 (10:39:57 a.m.-10:40:20 a.m.). See also HCN Personnel Policies Manual. Therefore, this Court declines to opine concerning whether this case was about free speech. According to the defendant’s counsel he states there is no record of the Appellee’s cause of action regarding free speech. The Appellee in oral argument stated that free speech was not a part of his complaint.
The trial court has done a thorough analysis of the history and interpretation of case law which might be used by the HCN Courts in interpreting this case. However, this is a tribal court, and while such analysis can provide guidance, it is not binding on this Court.
This Court is inclined to view the conduct of Mr. Brown as violative of the concept of Wogixate, which is a value that could be defined as respect. According to tradition, it is not the Ho-Chunk way for an individual who is part of this community to independently take action without being-respectful to the Tribe and its leaders. For an individual to conduct themselves in such a manner in the past would have resulted in banishment. Here, for his conduct as demonstrated by the record, Mr. Brown has suffered the loss of his employment, which is a significant punishment.
This case was very close due to the vague reasoning and method of termination. This Court, cautions administration and reminds it that clarity and documentation of decision making by the Personnel Department is very important to the employees, management and the Nation’s Courts. Absent such documentation and record such matters may be left to administrative codes or the Courts to discern. Respect to the tribe, to fellow employees and tribal leadership is key to our analysis. The action of Mi-. Brown in contacting the media constitutes an action motivated for his individual desires. Such conduct which is about the individual rather than what is good for the whole, the Ho-Chunk community, runs contrary to the mores and values of this Nation. For this reason and based on the available record and oral argument in this matter, the termination of Mr. Brown is upheld.
This case was brought under the old Personnel Policies and Procedures. The procedural history here is a bit unusual in that not only did the trial judge not author the opinion, but the Personnel Policies then in effect are no longer applicable. Therefore, this case is limited in its appli *41 cation. There is no need to determine whether the words and conduct of Dan Brown were protected, when his conduct ran so counter to those standards accepted by this tribal community. The determination of the supervisor was correct and is supported by the record. The Legislature has had an opportunity to address issues relating to employee conduct governing the representation of the Nation’s position system in public forums in its Ho-Chunk Nation Code (HCC), Title 6, Personnel, Employment and Labor Code, Section 5, Employment Relations Act of 2004 enacted December 9, 2004 with an effective date of January 31, 2005 at 30(e)(7). That section states:
“Unacceptable Conduct. The following employee acts, activities, or behavior that are unacceptable conduct.
(7) Conduct that discredits the employee or the Nation, or willful misrepresentation of the Nation. An employee may not present himself or herself as a representative of the Nation, or communicate with the news media on behalf of the Ho-Chunk Nation unless authorized or directed in writing by the Ho-Chunk Nation or its delegated representative(s).”
Based upon the policies of the Nation, Mr. Brown knew or should have known that his action was defined as “unacceptable conduct” which would result in disciplinary action.
The trial court erred and is reversed. Egi Heskekjet.

. (2006 SD 109, 725 N.W.2d 249 (2006)). A disgruntled tribal education coordinator who sought to be the tribal secretary but was not selected for that position, sent a scorching letter to the tribe's executive council complaining about fellow employees and stating that the tribal office was in turmoil and disarray and accusing the tribal chairman of neglect of duty. She had prepared the letter while she was at work, and put it on tribal letterhead. The tribe had a policy against political activity as part of its gaming compact, she was terminated for violating that policy, and her subsequent claim for unemployment insurance benefits was denied by the State. Employee claimed the denial was a violation of state and federal constitutional rights of free speech.